

# Logistics Service Agreement

(By and Between Daniel Defense, Inc. and
Jarrett Logistics Systems, Inc.)

## Table of Contents

**Page(s)**

LOGISTICS SERVICES AGREEMENT ...............................................................................3
    1. Services ...................................................................................................................3
    2. Independent JLS Relationship ................................................................................3
    3. Documentation .......................................................................................................3
    4. Cargo, Loss, Damage and Delay .........................................................................3-4
    5. Consequential Damages .........................................................................................4
    6. Shipper's Obligations .............................................................................................4
    7. JLS Compensation ..................................................................................................4
    8. Hazardous Materials ............................................................................................4-5
    9. Indemnification ......................................................................................................5
    10. Insurance ...............................................................................................................5
    11. Information Systems ..............................................................................................5
    12. Term and Termination ..........................................................................................6
    13. Jurisdiction and Venue .........................................................................................6
    14. Force Majeure ....................................................................................................6-7
    15. Exclusivity ............................................................................................................7
    16. Notice ....................................................................................................................7
    17. Confidentiality ......................................................................................................8
    18. No Construction Against Drafter ..........................................................................8
    19. Validity of Provisions ...........................................................................................8
    20. Effect of Waiver ...................................................................................................8
    21. Entire Understandings, Modifications ..................................................................8
SCHEDULE A - SCOPE OF SERVICES .............................................................................9
    Transportation Management Services ........................................................................9
    Service Standards .......................................................................................................9
    Auditing of Services ...................................................................................................9
SCHEDULE B - OBLIGATIONS OF SHIPPER .................................................................10
    Information .................................................................................................................10
    Obligations of Shipper ...............................................................................................10
SCHEDULE C - COMPENSATION ....................................................................................11
    Charges .......................................................................................................................11
SCHEDULE D - SHIPPER LOCATIONS ............................................................................12
SIGNATURE PAGE .............................................................................................................13

## LOGISTICS SERVICES AGREEMENT

This Logistics Services Agreement ("Agreement") is dated October 22, 2018 and is between Jarrett Logistics Systems, Inc. an Ohio corporation ("JLS") and Daniel Defense, Inc., a Georgia corporation ("Shipper").

JLS is a transportation broker licensed by the Federal Motor Carrier Safety Administration ("FMCSA") in Docket Number MC 369240 to arrange for the transportation of certain general commodities ("Goods") by motor carriers ("Carriers").

Shipper, to satisfy some of its transportation needs, hereby retains JLS to arrange for the transportation of Goods by Carriers.

The parties enter into this Agreement in accordance with 49 U.S.C. Section 14101(b)(1) and expressly waive any and all rights and remedies that each may have under 49 U.S.C. §§ 13101 through 14914 that are contrary to specific provisions of this Agreement.

1. ***Services.*** JLS agrees to arrange for transportation services as set forth in this Agreement and as set forth in Schedule A hereto, hereinafter referred to as Services for its freight logistics needs associated with the Shipper's locations (Refer to Schedule D, Shipper Locations). Other locations may be added as requested by Shipper. Except to the extent otherwise contemplated by this Agreement or Schedules, JLS will obtain and maintain all relevant and/or required licenses, permits and/or authority and will furnish all labor, supervision, materials, tools, equipment, facilities, and services to properly and efficiently provide the Services. The Services may be modified from time to time by mutual written agreement. This Agreement applies to all transportation services arranged by JLS on behalf of Shipper. JLS's responsibility under this agreement is limited to arranging for, but not actually performing, transportation of the Goods.

2. ***Independent JLS Relationship.*** The Parties understand and agree that the relationship between the Parties is and will remain that of independent companies and that no employer/employee or principal-agent relationship exists or is intended.

3. ***Bills of Lading and Shipping Documentation, Documentation.*** If requested by Shipper, JLS will provide Shipper with proof of acceptance and delivery of shipments in the form of a signed Bill of Lading or Proof of Delivery. Shipper's insertion of JLS's name on any bill of lading or shipping document will be for Shipper's convenience only and will not change JLS's status as a broker. The terms and conditions of any documentation used by Shipper or a Carrier will not supplement, alter, or modify the terms of this Agreement.

4. ***Cargo Loss, Damage, and Delay***
   A. Shipper understands and agrees that JLS is not a motor carrier or freight forwarder, and that JLS will not be liable for loss, damage, or delay in connection with the transportation of Goods. If requested by Shipper and agreed to by JLS, JLS may assist Shipper in the filing and/or processing of claims with Carriers.

3

B. Shipper acknowledges that Carriers will not be liable for the following: (1) damage to the Goods to the extent due to packaging, loading, unloading, blocking, bracing or securing of the Goods (unless Carrier has provided loading or unloading services at Shipper's request, in which case such Carrier may be liable for cargo damage caused by such loading or unloading services), (2) inherent vice or defect in the Goods, including rusting of metals, swelling of wood caused by humidity, moisture or condensation, or deterioration of perishable products; (3) an act of God or the public enemy; (4) any act or default of any Shipper, consignee, consignor, or beneficial owner of the Goods; (5) any act taken under authority of law; or (6) any act of war or terrorism.

C. Shipper agrees that liability of any Carrier for cargo loss, damage, and delay occurring within the United States for standard LTL and TL shipments will be the least of the following:

    (1) The actual value of the Goods
    (2) Repair cost of the Goods
    (3) $10 per pound per package for new items
    (4) $.10 per pound for used or refurbished items or
    (5) $100,000 per shipment
    (6) Applicable released value per NMFC

D. Shipper agrees that liability of any Carrier for cargo loss, damage and delay occurring within the Republic of Mexico will be governed by Mexican law and not exceed $.10 per pound.

E. Shipper agrees that the liability of any Carrier for cargo loss, damage and delay for any shipment originating in or destined to Canada will be governed by Canadian law and will not exceed $2.00 per pound.

F. Shipper agrees that for all other modes of transport, the transporting carrier's limitation of liability shall apply. These modes include, but are not limited to, volume LTL, Local Cartage, Expedited shipments of any kind, and air and ocean shipments.

G. The terms, conditions or provisions of any bill of lading or other shipping form, tariff or rule will be subject and subordinate to the terms of this Agreement and, in the event of a conflict, this Agreement will govern.

H. Shipper acknowledges that any claim for cargo loss, damage, or delay must be filed against a carrier within 9 months of the date of delivery of Goods, or in the case of non-delivery, within 9 months of the date delivery should have been made. Notice to JLS does not constitute filing of claim with a carrier. Any suit or other legal action to recover for cargo loss, damage, or delay, must be commenced against the Carrier no later than 2 years after declination of the cargo claim by Carrier.

5. **Consequential Damages.** Under no circumstances will JLS or Carrier be liable to Shipper for any consequential, indirect, incidental, or punitive damages of any kind.

6. **Shipper's Obligations.**

A. Shipper agrees to perform its obligations set forth and described in Schedule B attached hereto, hereinafter referred to as Obligations of Shipper

7. *JLS Compensation*
   A. Shipper agrees to pay the amounts described in Schedule C attached hereto and amended from time to time, hereinafter referred to as "Compensation".

8. *Hazardous Materials.* Shipper will provide JLS with advance notice of the proposed shipment of any hazardous material, as defined in 49 U.S.C. §5101, *et seq.* ("Hazardous Material") and provide a copy of the Material Safety Data Sheet for that Hazardous Material. Shipper will indemnify, defend and hold harmless Carriers and  JLS, their officers, employees, agents and insurers, against all claims, liabilities, losses, fines, legal fees and other expenses arising out of contact with, exposure to, or release of any Hazardous Material, including without limitation fines or expenses relating to the removal or treatment of that Hazardous Material or any other remedial action pertaining to that Hazardous Material under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601, *e seq.* as amended ("CERCLA"), The Resource Conservation and Recover Act, 42 U.S.C. §6901, *et seq,* as amended ("RCRA") or any comparable state law.

9. *Indemnification.* Shipper shall defend, indemnify and hold JLS, JLS's employees and agents and Carriers harmless against any losses caused by or resulting from (i) Shipper's or Shipper's employees' or agents' negligence or intentional misconduct, (ii) Shipper's breach of this Agreement, or (iii) Shipper's or Shipper's employees' or agents' violation of applicable laws or regulations.  Shipper shall also indemnify JLS from any attempts to recover from JLS by Shipper's insurance carrier or any other party in regards to claims for loss, damage, or delay to Goods. JLS shall defend, indemnify and hold Shipper, Shipper's employees and agents and Carriers harmless against any losses caused by or resulting from (i) JLS's or JLS's employees' or agents' negligence or intentional misconduct, (ii) JLS's breach of this Agreement, or (iii) JLS's or JLS's employees' or agents' violation of applicable laws or regulations.  JLS shall also indemnify Shipper from any attempts to recover from Shipper by JLS's insurance carrier or any other party in regards to claims for loss, damage, or delay to Goods. The obligation to defend includes payment of all reasonable costs of defense, including attorney fees, as they accrue.

10. *Insurance.* The following insurance policies must be maintained during all terms of the Agreement:
    A. Shipper.
        (1) Loss or damage to Goods
        (2) Workers Compensation Insurance
        (3) Employer's Liability Insurance
        (4) Commercial General Liability Insurance
    B. JLS.
        (1) Worker's Compensation Insurance
        (2) Employer's Liability Insurance
        (3) Commercial General Liability Insurance

5

C. Carriers. JLS will contractually require truckload and LTL Carriers maintain the insurance specified below.

    (1) Worker's compensation insurance in statutory amounts;

    (2) Occurrence based Truckers Policy or Automobile Liability Insurance with limits of $750,000 per occurrence, and Hazardous Materials coverage of not less than $5,000,000 per occurrence if applicable; and

    (3) Occurrence based cargo insurance with limits of liability of not less than $100,000 per shipment.

    (4) JLS's sole obligation is to obtain a certificate of insurance from the Carriers' insurers reflecting the foregoing types and amounts of insurance. JLS makes no representations or warranties regarding coverage or what exclusions or limitations any particular insurance policy may have.

**11. Information Systems** Any management information system or computer hardware or software used or supplied by JLS in connection with the Services is and will remain JLS's exclusive property. All management information systems and related computer software and documentation used or supplied by JLS are proprietary to JLS, and Shipper will treat all such systems as confidential and not copy, use, or disclose them to third parties without JLS's prior written consent, except as required by law.

**12. Term and Termination**

A. The initial term of this Agreement will be for a period of two (2) years. At the end of the initial term and each subsequent term, this Agreement will automatically renew for an additional two-year term.

B. Either Party may terminate this Agreement, with or without cause, by giving written notice to the other Party at least 90 days prior to the completion of the initial term. After the completion of the initial term, either Party may terminate this Agreement, with or without cause, by giving the other Party notice at least 90 days prior to the end of the subsequent term.

C. If either Party breaches the Agreement, the other Party may terminate the Agreement by giving 90 days' written notice, if the breach is not cured within that time period.

D. If either Party files a petition for or declares bankruptcy, reorganization or other similar relief from its creditors, the other Party shall have the right, subject to applicable federal bankruptcy law, to continue to enforce the Agreement or to terminate it immediately upon written notice to the bankrupt or insolvent Party.

**13. Jurisdiction and Venue**

A. This Agreement is governed by and construed in accordance with the applicable federal laws of the United States, or, alternatively, and depending on jurisdiction, the laws of the State of Ohio.

B. The parties agree to jurisdiction and venue in a United States Federal District Court located in Ohio, or if federal jurisdiction is not available, then in a State Court located in Ohio.

14. ***Force Majeure***. If performance by one Party is affected by any condition beyond the reasonable control of such Party, the performance of obligations under the Agreement (other than Shipper's obligation to pay for Services performed) affected by such condition will be suspended during the continuance of such condition. The Carriers engaged by JLS will be permitted an extension period equal to the period of suspension in order to complete shipments adversely affected by the suspension. Neither Party will incur any liability for damages resulting from such suspensions.

15. ***Exclusivity***. Unless mutually agreed upon in writing by both Shipper and JLS, Shipper acknowledges that the terms and conditions of this Agreement are based on the expectation that JLS will be offered the opportunity to arrange for all transportation services required by Shipper at Shipper facilities in (***Refer to Schedule D, Shipper Locations***). Shipper therefore agrees that Shipper will afford JLS the first right of refusal to manage all modes of transportation. If JLS cannot or chooses to not handle a specific transaction, JLS will notify Shipper on a timely basis and Shipper will then be permitted to make other arrangements for such transportation. JLS is not restricted from arranging transportation for entities other than Shipper.

16. ***Notice***. Any notices and other communications required or permitted under the Agreement must be in writing and be (1) delivered personally, (2) sent by facsimile or e-mail transmission if confirmed by notice sent by one of the other notice methods permitted in this paragraph, (3) sent by nationally recognized overnight courier guaranteeing next business day delivery, or (4) mailed by registered or certified mail (return receipt requested), postage prepaid, to the Party at the following addresses (or at such other addresses as are specified by like notice):

If to JLS:

Jarrett Logistics Systems, Inc.
Attn: Matt Angell
1347 North Main Street
Orrville, Ohio 44667

If to Shipper:

Daniel Defense, Inc.
101 Warfighter Way
Black Creek, GA 31308

All such notices and other communications will be deemed to have been given and received (1) in the case of personal delivery, on the date of such delivery, (2) in the case of facsimile or e-mail transmission that is confirmed by notice sent on the same day by one of the other methods permitted, on the date of transmission if sent on a business day (or if sent on other than a business day, on the next business day after the date sent), (3) in the case of delivery by nationally recognized overnight courier, on the business day following dispatch if sent by

guaranteed next day delivery, or (4) in the case of mailing, on the third business day following such mailing.

### 17. Confidentiality.

    A. As part of the business relationship between Shipper and JLS, either Party may be in or come into possession of information or data which constitutes trade secrets, know-how, confidential information, marketing plans, pricing, or anything else otherwise considered proprietary or secret by the other ("Confidential Information"). In consideration of the receipt of such Confidential Information and potential business, each Party agrees to protect and maintain such Confidential Information in the utmost confidence, to use such Confidential Information solely in connection with their business relationship, and, to take all measures reasonably necessary to protect the Confidential Information.

    B. Shipper agrees that JLS's costs for services is confidential and need not be disclosed to Shipper.

    C. Agreement and information pertaining to any Services will not be disclosed by either Party to any other persons or entities, except to the directors, officers, employees, attorneys, and accountants of each Party.

    D. This mutual obligation of confidentiality will remain in effect during the terms of the Agreement and for a period of two years following any termination.

### 18. No Construction against Drafter.

Each Party has participated in negotiating and drafting the Agreement, so if an ambiguity or a question of intent or interpretation arises, the Agreement is to be construed as if the Parties had drafted it jointly as opposed to being construed against a Party because it was responsible for drafting one or more provisions of the Agreement.

### 19. Validity of Provisions.

If any part of the Agreement is declared by a court to be invalid, such decision shall not affect the validity of any remaining portion of the Agreement.

### 20. Effect of Waiver.

The failure of either Party to enforce any of the rights given to it under the Agreement shall not be construed as a waiver of that right.

### 21. Entire Understanding, Modifications.

    A. This Agreement and individual Rate Confirmations contain the entire understanding and contractual agreement between the parties. Except as specifically stated in this Agreement, no tariffs or other contracts apply.

    B. This Agreement cannot be amended except in writing signed and dated by authorized representatives of both Parties.

    C. This Agreement supersedes and cancels all prior written and oral contracts and agreements with respect to the subject matter contained here within.

## Schedule A – Scope of Services

This Schedule A is a part of and subject to the Logistics Services Agreement (the "Agreement"), dated **October 22, 2018,** between Jarrett Logistics Systems, Inc. ("JLS") and Daniel Defense, Inc. ("Shipper").

TRANSPORTATION MANAGEMENT SERVICES



SERVICE STANDARDS

> JLS will perform the Services in good faith and in a timely, diligent and competent manner in accordance with applicable professional standards.

AUDITING OF SERVICES

> JLS will make the CzarLite Rating Application available via the QUOTE function in eSelect to Shipper personnel, should Shipper decide to post-audit shipments from their Weekly invoice from JLS.  Access to eSelect is available to current JLS clients via the internet only.  If Shipper personnel choose to rate shipments at their own facility via CzarLite software, then Shipper will be responsible for the appropriate SMC/CzarLite License Fees.

## Schedule B – Obligations of Shipper

This Schedule B is a part of and subject to the Logistics Services Agreement (the "Agreement"), dated **October 22, 2018,** by and between Jarrett Logistics Systems, Inc. ("JLS") and Daniel Defense, Inc. ("Shipper").  Shipper will perform its obligations described below during the term of the Agreement.

INFORMATION

> Shipper will provide JLS with timely, complete and accurate information regarding its transportation needs, including, shipping schedules, service requests, loss and damage claims and special requirements.  Shipper will use its best efforts to communicate service requests to JLS no less than 4 hours prior to the time the transportation services are required for less than truckload and airfreight shipments and not less than 12 hours prior to the time transportation services are required for truckload shipments.  JLS will use its best efforts to respond to all requests and in meeting real time demands of Shipper.

> Shipper will initiate requests for service by phone, fax, email, or electronic file during JLS'S normal hours of operation (6 a.m. to 9 p.m. local time, Monday through Friday), using procedures provided to Shipper by JLS.  JLS will abide by shipping hours at Shipper facilities, but with an effort to meet required delivery schedules.

OBLIGATIONS OF SHIPPER

> A. Shipper is responsible for ensuring that Goods are properly and safely loaded, supported, blocked, braced and secured. Shipper will be responsible for expenses arising out of any load shift that occurs during transportation due to improper or insufficient loading, blocking, or bracing.
> B. Shipper must provide necessary shipping instructions and properly identify all Goods in the bill of lading or other shipping instructions. Shipper will not tender any restricted commodities, including but not limited to hazardous materials and waste, oversize or overweight shipments, coiled or rolled products or commodities requiring protection from heat or cold, without properly identifying such shipments and making necessary prior arrangements for transportation.
> C. Unless Shipper has requested that JLS arrange for the Carrier to provide driver count services before dispatch and the Carrier performs such driver count services, Shipper is responsible for properly counting and recording the number of pieces transported and applying a protective seal to the loaded equipment.
> D. Shipper is responsible for checking all empty containers or trailers tendered for loading and rejecting any equipment that is not in apparent suitable condition to protect and preserve the Goods during transportation.
> E. If Shipper requests that JLS arrange for equipment to be dropped at a location for Shipper's convenience and left unattended by Carrier, Shipper and its consignors or consignees will not lose, damage, or misuse the equipment and Shipper will pay for

10

loss or damage to the equipment occurring during or as a result of such custody, control, possession or use of the equipment

## Schedule C – Compensation

This Schedule C is a part of and subject to the Logistics Services Agreement (the "Agreement"), dated **October 22, 2018,** by and between Jarrett Logistics Systems, Inc. ("JLS") and Daniel Defense, Inc., ("Shipper").

Reimbursements, rates and fees for Services under the Agreement will be as follows:

CHARGES

A.  JLS will invoice Shipper each week for its services *provided during the previous week* based on this Agreement and JLS invoiced rates and charges. Rates subject to ▮▮▮▮ series and reissues thereof.

B.  JLS will charge a service fee for paying any non-JLS routed transportation invoice at the Shipper's request. This fee will be ▮ of the gross invoice cost with a ▮ minimum charge.

C.  Shipper agrees to pay JLS within 7 calendar days of invoice date without deduction or setoff, via ACH or another electronic process agreed upon by both parties. JLS will only invoice Shipper and will not accept payment from any other 3rd party payment company. JLS may assess a service charge of ▮▮▮ per month (or the highest lawful rate, if less) on any late payments. Non-payment may result in an immediate suspension of Services. Customer agrees that JLS shall not be liable to Customer, or to any third party, for any suspension of the Services resulting from Customer's non-payment.

D.  If Shipper does not pay the invoiced amounts, JLS may commence a civil action to recover such invoiced amounts within 24 months of delivery of the shipments involved and may immediately suspend all transportation services until the outstanding invoice(s) are paid in full.

## Schedule D – Shipper Locations

| Location Name | Address | City | State | Zip |
|---|---|---|---|---|
| Daniel Defense, Inc. | 101 Warfighter Way | Black Creek | GA | 31308 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Each Party is signing this Agreement on the date stated opposite that Party's signature.

**Jarrett Logistics Systems, Inc.**

By: _____     Date: _10/16/18_

Print Name: MATT ANGELL

Title: VP, OPS

**Daniel Defense, Inc.**

By: _____     Date: _10/16/18_

Print Name: Andy Boyce

Title: Director of Procurement

---

*This document is copyrighted by **Jarrett Logistics Systems, Inc.** and may not be copied, reproduced or transferred in any form or under any circumstances without the prior written consent of **Jarrett Logistics Systems, Inc.***

***Jarrett Logistics Systems, Inc.** may not be held liable for any inaccuracies or errors in this document. All names, trademarks, products and services mentioned are registered or unregistered trademarks of their respective owners.*

*This document was prepared by **Jarrett Logistics Systems, Inc.***

*© **Jarrett Logistics Systems, Inc.** 2018*